WAYNE PORTER
REG. NO. 00622-043
3901 KLEIN BOULEVARD
LOMPOC, CA 93436

PRO SE

*Returned as*
*successive*
*Remedy*

~~FILED~~
CHARLOTTE, N. C.

⸱⸱ 30 2000

U. S. DISTRICT COURT
W. DIST. OF N. C.

## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| WAYNE PORTER,<br>      Plaintiff,<br><br>      v.<br><br>UNITED STATES OF AMERICA,<br>      Respondent. | NO. CV. 3:01cv577-1-V<br>(CH-CR-85-62-01)<br><br>**NOTICE OF MOTION AND MOTION PURSUANT TO TITLE 28, UNITED STATES CODE, § 2255; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE: *June 5* , 2000<br>TIME: 8: 45 AM<br>COURT: JUDGE ROBERT D. POTTER |

TO: Honorable Robert D. Potter, United States District Court Judge, Assistant United States Attorney, Kenneth D. Bell, Clerk of the above entitled Court:

PLEASE TAKE NOTICE that on the above mentioned date and time or soon thereafter, Wayne Porter, proceeding pro se, will hereby move the court under 28 U.S.C. § 2255 to vacate his conviction and sentence in the Western District of North Carolina.

## MOTION PURSUANT TO TITLE 28, UNITED STATES CODE, § 2255

Title 28, United States Code, § 2255 [§ 2255] provides a mechanism whereby a prisoner in custody of a federal court may claim the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United states, "or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack..." 28 U.S.C. § 2255. The statute in effect at the time of Porter's conviction and sentence allowed such a motion to be made at anytime." Id.

*Wayne Porter* /

WAYNE PORTER
REG. NO. 00622-043
3901 KLEIN BOULEVARD
LOMPOC, CA 93436

PRO SE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

WAYNE PORTER,              )    NO. CR. _____
        Plaintiff,         )         (CH-CR-85-62-01)
                           )
                           )
        v.                 )
                           )
                           )
                           )
UNITED STATES OF AMERICA,  )
        Respondent.        )
_____)


MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION PURSUANT TO TITLE 28,
UNITED STATES CODE, SECTION 2255

# TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES...................................ii,iii,iv,v

COMBINED STATEMENT OF FACTS AND PROCEDURE......................1

STATEMENT OF JURISDICTION.....................................2

STATEMENT OF ARGUMENT........................................3

ARGUMENT:

    A.    THE JURY INSTRUCTIONS GIVEN WERE PLAINLY ERRONEOUS AND CONSTITUTIONALLY DEFICIENT, VIOLATING PETITIONER'S SIXTH AMENDMENT RIGHT TO A JURY TRIAL BY FAILING TO PRODUCE A UNANIMOUS VERDICT AS TO EACH OF THE ESSENTIAL ELEMENTS OF THE OFFENSE..............................6

    B.    THE JURY INSTRUCTIONS WERE ALSO DEFECTIVE BECAUSE THEY PERMITTED THE JURY TO BASE THEIR GENERAL VERDICT ON VIOLATIONS OF TITLE 18 U.S.C § 2 AND 1952, WHICH WERE LEGALLY INADEQUATE FOR A CONTINUING CRIMINAL ENTERPRISE CONVICTION...............................9

    C.    THE FAILURE OF PORTER'S COUNSEL TO OBJECT TO OR TO OTHERWISE CHALLENGE SUCH POTENTIALLY PREJUDICIAL AND CONSTITUTIONALLY DEFICIENT JURY INSTRUCTIONS CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL..........14

    D.    THE RECORD RELFECTS CAUSE AND PREJUDICE EXCUSING PRODCEDURAL DEFAULTS OF PETITIONER'S SIXHT AMENDMENT CLAIM BASED UPON THE DEPRIVATION OF HIS RIGHT TO A JURY TRIAL, NOTWITHSTANDING WHETHER HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL...............................22

    E.    IN LIGHT OF RICHARDSON IT IS PERTINENT FOR THIS COURT TO RE-REVIEW THE ISSUE DECIDED BY THE UNITED STATES SUPREME COURT AS IT PERTAINS TO PORTER, SHOWING A CHANGE OF CIRCUMSTANCES..............................27

    F.    THE COURTS HOLDING IN RUTLEDGE ALSO BARS CUMULATIVE PUNISHMENT FOR CONSPIRACY (§846) AND CONTINUING CRIMINAL ENTERPRISE (§848)..............................30

CONCLUSION..................................................31

CERITIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Cases

Page(s)

BAILEY v. UNITED STATES, 516 U.S. 1327 (1995) . . . . . . . . 23

CAGE v. LOUISIANA, 498 U.S. 9, 111 S.CT. 328,
112 L.ED.2D 339 (1990) . . . . . . . . . .7

CHAPMAN v. CALIFORNIA, 386 U.S. 18, 87 S.CT.824,
17 L.ED.2D 1705 (1967) . . . . . . . . 25

GILMORE v. TAYLOR, 113 S.CT. 2112 (1993) . . . . . . . . . .22

GRAY v. LYNN, 6 F.3D 265, 269 (5th CIR. 1993) . . . . . .18,19

GRIFFIN v. UNITED STATES, 502 U.S. 46, 60, 112 S.CT. 466,
474,116 L.ED.2D 371 (1991) . . . . .11

HICKS v. SMALL, 69 F.3D 967 (9th CIR. 1994) . . . . . . . . 26

IN RE WINSHIP, 397 U.S. 358, 364 (1970) . . . . . . . . . .8

KIMMELMAN v. MORRISON, 477 U.S. 365, 106 S.CT. 2574
91 L.ED.2D 305 (1986) . . . . . . . . 14

NEDER v. UNITED STATES, ___ U.S. ___, 119 S.CT. 1827,
1835 (1999) . . . . . . . . . . .7,25,26

PATTERSON v. DOHM, 769 F. SUPP. 1103, 1107-13 (D. NEB. 1991) . .19

PATTERSON v. NEW YORK, 432 U.S. 17, 210, 97 S.CT. 2319, 2327,
52 L.ED.2D 281 (1977) . . . . . . . . . 8

RICALDAY v. PROCUNIER, 736 F.2D 203 (5th CIR. 1984) . . . . . 21

RICHARDSON, ___ U.S. ___, 119 S.CT. 1707 (1999) . . . . . .2,3,6

RUTLEDGE v. UNITED STATES, 517 U.S. 292, 116 S.CT. 1241,
134 L.ED.2D 419 (1996) . . . . . . . 13

## TABLE OF AUTHORITIES

Cases

Page(s)

SHAD v. ARIZONA, 501 U.S. 632 . . . . . . . . . . . . . . . . 24

STRICKLAND v. WASHINGTON, 466 U.S. 668, 104 S.CT. 2052,
80 L.ED.2D 674 (1984) . . . . . . PASSIM

STROMBERG v. CALIFORNIA, 283 U.S. 359, 51 S.CT. 532,
75 L.ED. 1117 (1931) . . . . . . . .10,13

SULLIVAN v. LOUISIANA, 508 U.S. 275, 113 S.CT. 2078,
142 L.ED.2D 182 (1993) . . . . .7,8,9,25,26

TAYLOR v. STARNES, 650 F.2D 38 (4th CIR. 1981) . . . . . . . .16

TURNER v. UNITED STATES, 396 U.S. 398, 90 S.CT. 642,
24 L.ED.2D 610 (1970) . . . . . . . . .11

UNITED STATES v. BAKER, 905 F.2D 1100 (7th CIR. 1990) . . . . . 13

UNITED STATES v. CHRONIC, 466 U.S. 648, 651, 104 S.CT. 2039,
2035, 80 L.ED.2D. 659 (1984) . 15,18,20,
21

UNITED STATES v. FRADY, 456 U.S. 152, 102 S.CT. 1584,
71 L.ED.2D. 816 (1982) . . . . . . . 22,24

UNITED STATES v. HALL, 93 F.3D 126, 129 (1996) . . . . . . 23,24

UNITED STATES v. HEAD, 641 F.2D 174 (4th CIR. 1981) . . . . . . 13

UNITED STATES v. LURZ, 666 F.2D 69 (4th CIR. 1981) . . . . . 13,17

UNITED STATES v. PORTER, 821 F.2D 968 (4th CIR. 1987) . . . . . .2

UNITED STATES v. RICKS, 776 F.2D 455 (4th CIR. 1985) . . . . 10,17

UNITED STATES v. SPAN, 75 F.3D 1383 (9th CIR. 1996) . . . . .19,20

# TABLE OF AUTHORITIES

Cases                                                              Page(s)

UNITED STATES v. SWEDZINKI, 160 F.3D 498 (8th CIR. 1998) . . . .23

UNITED STATES v. WEBSTER, 639 F.2D 174, 181 (4th CIR. 1981) .10,17

YATES v. UNITED STATES, 354 U.S. 298, 77 S.CT. 1064,
                         1 L.ED.2D 1356 (1957). . . . . . . . 10,11

## STATUTES AND RULES

18 U.S.C. § 2 . . . . . . . . . . . . . . . . . . .4,9,10,17

18 U.S.C. § 111 . . . . . . . . . . . . . . . . . . . . . 20

18 U.S.C. § 924(C) . . . . . . . . . . . . . . . . . . . .23

18 U.S.C. § 1952 . . . . . . . . . . . . . . . . .4,9,10,12,17

21 U.S.C. § 801-966 . . . . . . . . . . . . . . . . . .10,17

21 U.S.C. § 841(A)(1) . . . . . . . . . . . . . . . . . . .9

21 U.S.C. § 846 . . . . . . . . . . . . . . . . . . . .13,17

21 U.S.C. § 848 . . . . . . . . . . . . . . . . . . . PASSIM

21 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . .PASSIM

WAYNE PORTER
REG. NO. 00622-043
3901 KLEIN BOULEVARD
LOMPOC, CA 93436


PRO SE


**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

WAYNE PORTER,            )      NO. CR. _____
      Plaintiff,        )           (CH-CR-85-62-01)
                  )
                  )
      v.              )
                  )
                  )
UNITED STATES OF AMERICA,  )
      Respondent.       )
_____)


**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION PURSUANT TO TITLE 28, UNITED STATES
CODE, SECTION 2255**

COMBINED STATEMENT OF FACTS AND PROCEDURE

On July 16, 1985, Porter was indicted on 28 counts of a 45 count indictment. Either prior to trial or during trial, the district court dismissed 12 of the 28 counts, thus allowing the jury to decide only 16 counts in their deliberation, which resulted in a verdict of guilty on all counts.

On direct appeal, the Court rendered a published opinion United States v. Porter, 821 F.2d 968 (4th Cir. 1987). The Court reversed five of the 16 counts Porter was convicted of, finding insufficient evidence to support the jury's verdict of guilt.

In addition to the five counts that was reversed for insufficient evidence, the Court set aside the sentences, but not

the convictions, on four other separately charged conspiracy counts. In all other respects, the judgements of the District Court were affirmed.

## STATEMENT OF JURISDICTION

This Court has jurisdiction pursuant to Title 28, United States Code, Section 2255. Which allows a defendant to attack his invalid conviction or sentence in light of the Supreme Court's interpretation of a criminal statute, if that interpretation reveals that the defendant's conviction, resulted from a district court's instructions which erroneously lessened the government's burden of proof on the essential elements of the offense charged, applies to collateral review. 28 U.S.C.A. 2255.

On June 1, 1999, the Supreme Court decided <u>Richardson v. United States</u>, 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999), and determined that a jury in a § 848 case must unanimously agree not only that the defendant committed some "continuing series of violations," but also, which specific "violations make up that 'continuing series'".

The Supreme Court's holding in <u>Richardson</u> is a statutory interpretation of the law based upon history, tradition, and practice. Therefore, the Court's holding in <u>Richardson</u> involves the substantive construction of a criminal statute. Therefore, in light of <u>Bousley v. United States</u>, 118 S.Ct. 1604 (1998), <u>Richardson</u> applies retroactively because it set forth substantive law 118 S.Ct. at 1609.

## STATEMENT OF THE ARGUMENT

The Supreme Court held in <u>Richardson</u> that a jury in a federal criminal case brought under § 848 must unanimously agree not only that the defendant committed some "continuing series of violations" but also, that the defendant committed each of the individuals violations necessary to make up that "continuing series."

The Court's holding in <u>Richardson</u> reveals the Trial Court in Porter's case erred by failing to properly instruct the jury that they must not only unanimously agree that Porter committed some continuing series of violations, but they must also unanimously agree as to which three individuals violations they found that satisfied this element of the CCE statute.

In this case the jury was only required to find that Porter committed some three felony violations of the narcotics laws, without being required to unanimously agree as to which three violations constituted the continuing series of underlying offenses that formed the basis for the CCE conviction. The Richardson error is based on the omission of a required instruction. In petitioner's case the omission effectively withdraw an element of the offense form the jury's consideration.

Had the Court properly instructed the jury and not omitted the necessary element of the offense; Petitioner could prove the outcome would have been different. That omitting the Richardson instructions could have permitted the jury to avoid discussion of the specific factual details of each violation, thus potentially covering-up wide disagreement among the jurors about just what the

defendant did, or did not, do.

There were also other fundamental errors in the Court's charge. The Court instructed the jury they could find as part of the continuing series of CCE predicate offenses, counts that charged that Porter traveled in interstate commerce for purposes of carrying on an illegal drug activity in violation of 18 U.S.C. § 1952. Those violations do not qualify as "violations" under the CCE statute and thereby permitted the jury to return a guilty verdict on legally inadequate grounds because they were not proscribed by Title 21, subchapters I or II, or that the five separately charged conspiracy counts could not constitute part of the "series of violations". The jury was not allowed to consider whether there was one conspiracy, or whether there was five separate conspiracies as alleged in the indictment.

At the time of Petitioner's trial in this case, this Circuit had already ruled that violations of Title 18 U.S.C. §§ 2 and 1952 do not qualify as predicate felonies for a CCE charge.

The CCE statute's unanimity requirement and this Circuit's holding that only Title 21 offenses could serve as underlying offenses for a CCE violation represented a viable defense to the CCE charge in this case. Nonetheless, defense counsel failed to present it to the jury by failing to object to jury instructions which did not include the three specific violations as elements of the offense and by failing to propose proper instructions.

The United States Supreme Court has since held that the three predicate offenses do constitute separate elements of the CCE offense. As a result, review of the jury instructions given below

reveals that they failed to require the government to prove these elements beyond a reasonable doubt, and therefore failed to produce a verdict consistent with Petitioner's Sixth Amendment right to a jury trial. This constitutional deprivation occurred without objection by defense counsel.

The jury instructions' variance from the requisite elements of the CCE offense further prejudiced the integrity of the adversarial testing process to the detriment of Petitioner to the degree of violating Porter's rights to due process.

The lack of representation afforded Petitioner with respect to the jury instructions violated his right to effective assistance of counsel. The basic inquiry when applying the Strickland standards for reviewing claims of ineffective assistance is whether counsel's deficient performance precluded meaningful adversarial testing of the government's evidence by appropriate legal standards. The errors of Porter's counsel in this case eliminated the adversarial testing of the government's proof of essential elements of the offense and resulted in the jury resting their verdict on legally inadequate theories. Each result represents a breakdown in the adversarial testing process establishing that Petitioner has been denied his Sixth Amendment right to effective assistance of counsel. Consequently, Porter is entitled to relief based upon (a) the denial of effective representation as guaranteed by the Sixth Amendment; and (b) the denial of Porter's Sixth Amendment right to a jury, since procedural default of the later claim is excused by establishment of the former. Moreover, even if this Court could find counsel's

performance satisfied Petitioner's right under the Sixth Amendment, the record reflects cause and prejudice excusing procedural default of Porter's Sixth Amendment claim based upon the deprivation of his right to a jury trial.

ARGUMENT

A.    **THE JURY INSTRUCTIONS GIVEN WERE PLAINLY ERRONEOUS AND CONSTITUTIONALLY DEFICIENT, VIOLATING PETITIONER'S SIXTH AMENDMENT RIGHT TO A JURY TRIAL BY FAILING TO PRODUCE A UNANIMOUS VERDICT AS TO EACH OF THE ESSENTIAL ELEMENTS OF THE OFFENSE.**

Before directly examining the issue of whether trial counsel's representation was constitutionally ineffective under the standards set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), it is necessary to examine the severity of the harm worked by the jury instructions to the fairness of Petitioner's trial over his counsel's silence. Such an examination of the jury instructions serve two purposes. First, the instructions were so deficient they appear to have worked a separate constitutional deprivation of Porter's Sixth Amendment rights entitling him to § 2255 relief. Second, the extent of prejudice caused by the instructions highlights the degree to which counsel at trial and on direct appeal rendered ineffective assistance, as discussed infra.

Title 21 U.S.C. § 848 forbids any person from "engaging in a continuing criminal enterprise," and through its definition of that term, requires proof the violations alleged, be part of a "continuing series of violations" under the narcotics laws embodied in subchapters I or II of Title 21, United States Code.

In <u>Richardson v. United States</u>, the United States Supreme Court recently held that each of the "violations constituting the series" are elements under § 848. Consequently, the Supreme Court held, the jury must unanimously find the government has proven each of the "violations" constituting the "series" beyond a reasonable doubt. 119 S.Ct. 1709. A review of the Supreme Court's <u>means vs elements</u> analysis is not pertinent to this petition. The import of the decision is its holding that each of the violations must be unanimously found by the jury deciding the accused's fate. In Petitioner's case, the District Court failed to require such a finding by the jury.

As to the "continuing series of violations" element, the jury instructions given below only required a finding that Porter committed three or more acts specifically prohibited by certain sections of the United States Code. In short, the jury instructions given in Petitioner's case failed to require a unanimous verdict of guilt beyond a reasonable doubt as to the essential elements of the offense.

This omission rendered the instructions constitutionally deficient. In <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 113 S.Ct. 2078, 142 L.Ed.2d 182 (1993), the trial court gave the jury a "reasonable doubt" instructions which violated the accused's Fifth and Sixth Amendment rights under <u>Cage v. Louisiana</u>, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). The Supreme Court granted certiorari to determine the standard of review applicable to such a constitutional deprivation. The Supreme Court held that the instruction resulted in the type of "structional error" which

defied harmless error analysis and automatically required vacation of his conviction. 113 S.Ct. at 2083. See also, Neder v. United States, ____ U.S. ____, 119 S.Ct. 1827, 1835. (Decided June 1, 1999) (improper instructions on elements of the offense violates the Sixth Amendment's jury trial guarantee).

As in Sullivan, the jury's verdict below did not satisfy Petitioner's right to a jury because it did not represent a finding of the facts essential to meet the elements of the offense. E.g., Patterson v. New York, 432 U.S. 197, 210, 97 S.Ct. 2319, 2327, 52 L.Ed.2d 281 (1977). In re Winship, 397 U.S. 358, 364, (1970). This point is demonstrated by use of the Supreme Court's analytical framework centering on mandatory presumptions violative of the Fourteenth Amendment. See, Sullivan, 508 U.S. at 208-81, 113 S.Ct. at 2082. The jury in this case was not required to find beyond a reasonable doubt the existence of facts that were "so closely related" to each of the elements of the offense that their findings were the functional equivalent of finding the "element" required proven. Id. The jury was required only to find a "series of violations of the federal laws." They were not required to unanimously find the same three "violations" or that the offenses constituting the "series" were felony violations of Title 21, subchapters I or II, as required by § 848. A finding of a "series of violations of the federal narcotics laws" is not "so closely related" to a unanimous finding of three specific violations constituting felonies under subchapters I and II for the two to be considered "functionally equivalent." As such, the jury's verdict below does not represent a "complete verdict" as to

each essential element required under § 848. This violated Porter's Sixth Amendment jury trial guarantee.

In sum, Petitioner is correct in asserting that the jury instructions given over trial counsel's silence denied him his Sixth Amendment right to a jury verdict of guilt beyond a reasonable doubt as to each of the elements of § 848.

B. **THE JURY INSTRUCTION WERE ALSO DEFECTIVE BECAUSE THEY PERMITTED THE JURY TO BASE THEIR GENERAL VERDICT ON VIOLATIONS OF TITLE 18 U.S.C. § 2 AND 1952, WHICH WERE LEGALLY INADEQUATE FOR A CONTINUING CRIMINAL ENTERPRISE CONVICTION.**

The jury instructions given in this case were prejudicial beyond the fact that they failed to require jury unanimity on all essential elements of the offense. The District Court erroneously instructed the jury that:

> If you find beyond a reasonable doubt that the defendant Wayne Porter, is guilty as charged in one or more of Counts One, Two, Seven, Sixteen, Seventeen, Eighteen, Nineteen, Twenty-Four, Twenty-Five, Twenty-Six, Twenty-Seven, Twenty-Eight, which he is charged with in the indictment, and that the conduct charged in any of these counts, together with additional violations of the drug laws, where ever they occurred, constitute a total of three or more violations of the federal drug laws committed over a period of time with a similar purpose. This will constitute a finding that the defendant, Wayne Porter, engaged in a continuing series of violations.

> Id., Trial Record Volume 9, at pp. 216 and 217, (Emphasis added).

Here, Counts Two, Four, and seven alleged violations of 21 U.S.C § 841(a)(1), and 18 U.S.C. § 2. Counts Seventeen and Twenty-Five alleged violations of 18 U.S.C, § 1952.

The instructions erroneously permitted the jury to find as the

felony violation § 848(c)(1) and the continuing series § 848(c)(1), violations of Title 18 U.S.C. §§ 2 and 1952. Therefore, the jury was allowed to return a guilty verdict under § 848, on legally inadequate grounds. Because the instructions specifically provided that Title 18 U.S.C. §§ 2 and 1952 offenses could constitute the felony violation and the "continuing series of violations" despite the fact they were not proscribed by Title 21, subchapters I or II.

This Circuit had made clear, years prior to Porter's trial, in United States v. Webster, 639 F.2d 174, 181 (4th Cir. 1981), that violations of 18 U.S.C. §§ 2 and 1952, could not support a conviction under 21 U.S.C. § 848. The Court opined:

> None of those provisions are among the ones described in 21 U.S.C. § 848(b) as comprising a "continuing criminal enterprise."
>
> Id., at 181.
>
> In its instructions, the court incorrectly informed the jury that the violations of 18 U.S.C. 1952(a)(3) could support conviction under § 848.
>
> Ibid.

This Circuit reiterated in United States v. Ricks, 776 F.2d 455 (4th Cir. 1985), that only violations found in Title 21, would suffice to support a CCE conviction. The Court opined:

> [W]e must decide what offenses may be used as predicates for the CCE violation ... since § 848(b) refers to "violations of this subchapter or subchapter II of this chapter [21 U.S.C. §§ 801-966], violations of 18 U.S.C. §§ 2 and 1952 do not qualify as predicate felonies for a CCE charge ...
>
> Id., at 463.

The Supreme Court has ruled that general verdicts should be

set aside when one of the possible basis of conviction is unconstitutional, <u>Stromberg v. California</u>, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), or legally inadequate, <u>Yates v. United States</u>, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), but not when one of the grounds submitted is supported by insufficient evidence. <u>Griffin v. United States</u>, 502 U.S. 46, 60, 112 S.Ct. 466, 474, 116 L.Ed.2d 371 (1991) (though holding "it would generally be preferable" to give an instruction removing the unsupported ground from the jury's consideration); <u>see also</u>, <u>Turner v. United States</u>, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970). In <u>Griffin</u>, the Supreme Court distinguished <u>Stromberg</u> and <u>Yates</u> from <u>Griffin</u> and <u>Turner</u> by the following:

> Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law-- whether, for example, the action in question is protected by the Constitution, is time barred, <u>or fails to come within the statutory definition of the crime.</u> When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors are well equipped to analyze the evidence.

<u>Id</u>., Griffin, 502 U.S. at 59, (emphasis added).

In this case, the instructions permitted <u>not</u> only violations of Title 18 to be considered by the jury as underlying offenses for the CCE violation, but also, allowed the jury to considered Counts 27 and 28 of the indictment as two of the violations needed for the "continuing series," when the Court had already ruled before the case was submitted to the jury, that the government had presented no evidence about the substance of the calls placed by

Porter from Lyons, Georgia, to Porter's residence in Wilkes County. Therefore, the Court dismissed those charges as to Terry Porter, but refused to do the same as to Wayne Porter, despite the fact that no connection was made between any of the calls or any illegal drug transaction by Porter.

Counts 27 and 28 were not the only counts the government failed to present sufficient evidence to allow the jury to consider those offenses as part of the continuing criminal enterprise charge over the defendant's same objection. There were others, for example, the government failed to show that any overt act alleged in Count 16, was committed in the Western district of North Carolina. The same also applied with respect to Counts 17 and 25, which charged that Porter travelled in interstate commerce in violation of 18 U.S.C. § 1952.

Here, the jury's verdict clearly reveals a genuine possibility of juror confusion about the necessary violations needed to trigger the statute. For example, six of the twelve counts, the jury was allowed to consider as underlying offenses, that formed the basis for the CCE conviction, were either violations of Title 18 U.S.C. § 1952 or they were reversed on direct appeal for either lack of evidence as to some counts or no evidence at all as to other counts. Also, the sentences, but not the convictions, were vacated on four other separately charged conspiracy counts because of double jeopardy implications.

The jury's verdict clearly reveals they were confused about what Porter did or did not do.

In this case, the instructions left the jurors with the

opportunity to rely upon not merely <u>one</u>, but six legally inadequate theories to support the "series of violations" element and there is no reason to think they did not err.

The instructions also allowed the jury to count the five separately charged conspiracies charged in Counts 1, 16, 18, 19, and 24 as "violations" in the requisite "series", when both logic and precedent from this Circuit and other circuits dictate that the same conspiracy satisfying the first element of § 848 cannot also be included to satisfy the three predicate "violations" required by the second element. This proposition had been excepted by this Circuit at the time of Porter's trial. <u>United States v. Lurz</u>, 666 F.2d 69 (4th Cir. 1981). <u>See</u> <u>also</u>, <u>United States v. Baker</u>, 905 F.2d 1100 (7th Cir. 1990). The Supreme Court's holding in <u>Rutledge v. United States</u>, 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996), that "a conspiracy as defined in § 846 does not define a different offense from the CCE offense defined in § 848" would seem to settle the issue. The jury should have been instructed that the conspiracies charged in Counts 1, 16, 18, 19, and 24 were necessary to satisfy the "in concert element" of Count 34, and should not be considered as "violations" constituting the requisite series under the second element of the § 848 count.

If the instructions given in this case, and the general verdict they authorized, were challenged at trial and on direct appeal they would necessitate reversal pursuant to <u>United States v. Head</u>, 641 F.2d 174 (4th Cir. 1981), where the Court held:

> [W]e agree with the Ninth's Circuit's view, ... that <u>Stromberg v. California</u>, 283 U.S. 35, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), compels an appellate court to reverse where a general verdict

renders it impossible to say whether a defendant
was convicted under an erroneous view of the law.

Id., Head, at 179.

In sum, the instructions deficiency of failing to require
juror unanimity on each of the elements of the § 848 charge was
significantly compounded by the instructions implicit permission
to the jury to rest a guilty verdict on legally inadequate
theories. This demonstrated prejudice worked by the jury
instructions further highlights the extent to which Petitioner's
counsel was ineffective both at trial and on direct appeal.

C.     THE FAILURE OF PORTER'S COUNSEL TO OBJECT TO OR TO
       OTHERWISE CHALLENGE SUCH POTENTLY PREJUDICIAL AND
       CONSTITUTIONALLY DEFICIENT JURY INSTRUCTIONS
       CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL.

The lack of representation afforded Petitioner with respect to
the jury instructions violated his rights to the effective
assistance of counsel. Consequently, Porter is entitled to relief
based upon (a) the denial of effective representation as
guaranteed by the Sixth Amendment, and (b) the denial of
Petitioner's Sixth Amendment right to a jury, since procedural
default of the latter claim is excused by establishment of the
former. "Absent unusual circumstances, a showing of ineffective
assistance of counsel satisfies both cause and prejudice."

Of course, the standard relied upon for assessing a claim of
ineffective assistance of counsel were set forth by the Supreme
Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,
80 L.Ed. 674 (1984). However, the verbiage of the two-prong test
set forth in the Strickland opinion should not mechanically be

repeated and applied without regard to the Supreme Court's statements revealing its purpose. In <u>Kimmelmen v. Morrison</u>, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), the Supreme Court wrote:

> The essence of an ineffective claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and verdict rendered suspect.
>
> <u>Id</u>., 477 U.S. at 374.

The Supreme Court has repeatedly indicated that the balance is upset when, because of counsel's errors, the prosecution's evidence is not subjected to meaningful adversarial testing:

> The right to the effective assistance of counsel is the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted-- even if defense counsel may have made demonstrable errors-- this kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated.
>
> <u>E.g</u>., <u>United States v. Cronic</u>, 466 U.S. 648, 651, 104 S.Ct. 2039, 2045, 80 L.Ed.2d 659 (1984).

The errors of Porter's counsel in this case eliminated the adversarial testing of the government's proof of essential elements of the offense (Argument "A", page 5, <u>supra</u>) and likely resulted in the jury resting their verdict on legally inadequate theories (Argument "B", page 7, <u>supra</u>). Each result represents a breakdown in the adversarial testing process establishing that Petitioner has been denied his Sixth Amendment right to effective assistance of counsel.

## (1) OBJECTIVE REASONABLENESS

Under the first prong of the standard set forth by the Supreme Court in _Strickland_, _supra_, petitioner "must show that counsel 'failed to exercise the customary skills and diligence that a reasonably competent attorney would [have] exhibit[ed] under similar circumstances.'" _Taylor v. Starnes_, 650 F.2d 38 (4th Cir. 1981); citing _McNamara v. United States_, (4th Cir. 1994). Further focusing the proper analysis under the first prong, the Supreme court again focuses the inquiry on making the adversarial testing process work:

> In making the competency determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms is to make the adversarial testing process work in the particular case.
>
> _Id._, _Strickland_, 466 U.S. at 690.

Porter submits that, as a matter of law, the adversarial testing process does not work when the government's evidence is not tested by the jury as to each essential element of the offense.

It is fundamental that the function of defense counsel at trial is to learn all that is required of the government to prove the offense charged, to confront the prosecution's evidence offered to prove these elements-- through effective cross-examination or the presentation of defense witnesses, and to argue persuasively to the jury that the prosecution has not met their burden of proof explained to them through the jury instructions. The adversarial testing process does not work then, because of neglect or incompetence rather than strategy, viable defenses are

not presented to the jury by the introduction of evidence, by argument, and by proper jury instructions. Reasonable investigation of possible defense theories in this case would have lead to the discovery of United States v. Lurz, 666 F.2d 69, 76 (4th Cir. 1981). In Lurz, the Court held: "One may not first prove a conspiracy to distribute to establish a § 846 violation, and then move on to convict under § 848 as well, by using the very same conspiracy to distribute for the felony violation of the federal narcotics laws (item one in the five point scheme)". In United States v. Ricks, 776 F.2d 455 (4th Cir. 1985), the Ricks Court, relying on United States v. Webster, 639 F.2d 174, 181 (4th Cir. 1981), held that: "[s]ince § 848(b) refers to 'violations of this subchapter or subchapter II of this chapter [21 U.S.C. §§ 801-966],' violations of 18 U.S.C. §§ 2 and 1952 do not qualify as predicates felonies for a CCE charge." These precedents disclosed Porter's most viable defenses to his most serious charge. Accordingly, to fulfill his function of making the adversarial testing process work, it was incumbent upon defense counsel to present the defenses to the jury as part of the jury instructions. Instead of proposing jury instructions that failed to require the government to fully meet their burden of proof, defense counsel in this case quietly acceded to instructions affirmatively lessening the government's burden by allowing conviction on numerous legally inadequate theories. This representation fell below an objective standard of reasonableness under the first prong of the Strickland inquiry.

## (2) PREJUDICE

> Under the second prong of the Strickland standard,
> Petitioner must show: that their is a reasonable
> probability that, but for counsel's unprofessional
> errors, the result of the proceeding would have
> been different. A reasonable probability is a
> probability sufficient to undermine confidence in
> the outcome.

Strickland, 466 U.S. at 694.

Again, the Supreme Court indicated that this principle is not to be mechanically applied based upon speculation about the expected outcome but rather upon reliability of the adversarial process:

> The ultimate focus of inquiry must be on the
> fundamental fairness of the proceeding whose
> result is being challenged. In every case the
> court should be concerned with whether, despite
> the strong presumption of reliability, the result
> of the particular proceeding is unreliable because
> of a breakdown in the adversarial process that our
> system counts on to produce just results.

Strickland, 466 U.S. at 696.

"If counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." United States v. Cronic, supra.

For the reasons presented in the foregoing arguments, counsel's performance in this case prejudiced the reliability of the adversarial testing process in a variety of ways. Most dramatically, counsel's performance removed from the adversarial testing process at least one element of the government's burden of proof. See, Gray v. Lynn, 6 F.3d 265, 269 (5th Cir. 1993). Similarly, it precluded presentation of viable defenses based upon the elements removed from consideration. See, United States v.

Span, 75 F.3d 1383 (9th Cir. 1996). Additionally, counsel's performance resulted in the jury's opportunity to convict petitioner upon legally inadequate theories. See, Patterson v. Dohm, 769 F. Supp. 1103, 1107-13 (D. Neb. 1991).

In Gray, a state prisoner convicted of attempted first-degree murder claimed ineffective assistance of counsel based upon the failure to object to an erroneous elements instructions. Though Louisiana law required a specific intent to kill a human being, the prisoner's counsel failed to object to an instruction that he could be found guilty if he had either the intent to kill or the intent to inflict great bodily harm. U.S. v. Hord, 276 F.3d at 286-89 (5th Cir. 1993). In the habeas proceeding, the state of Louisiana conceded that counsel's failure to object fell outside the range of professional competence. 6 F.3d at 369. Noting that "it is more than well settled that juries are presumed to follow their instructions," the Court of Appeals for the Fifth Circuit granted habeas relief and ordered a new trial. 6 F3d at 271. This case is analogous. Just as in Gray, the erroneous elements instructions given in this case relieved the prosecution of proving an element of the offense-- three specific felony violations of Title 21, subchapters I and II of the United States Code. Just as in Gray, the failure of defense counsel to object to the Title 18 offenses being utilized to prove the three predicate offenses for the CCE conviction placed his representation outside the range of professional competence.

In Span, the Ninth Circuit Court of Appeals vacated the convictions of two defendants charged with assaulting a federal

officer in violation of 18 U.S.C. § 111. Though counsel offered three proposed instructions on similar affirmative defenses, counsel failed to offer an instruction on the defense that a person has a right to resist an officer who is using excessive force. 75 F.3d at 1388-89. The Ninth Circuit rejected the government's argument that the decision was strategic and therefore entitled to deference, reasoning:

> Counsel's errors with the jury instructions were not a strategic decision to forego one defense in favor of another. They were the result of a misunderstanding of the law.

> Id., at 1390.

Similarly, in this case defense counsel's misunderstanding of or failure to research § 848 resulted in his failure to present viable defense to the jury for their consideration.

In Patterson, a state prisoner convicted of conspiracy to commit murder sought habeas corpus relief based upon claims of ineffective assistance of counsel. United States District Judge Warren Urbon granted relief, accepting the report and recommendation of Magistrate Judge David Piester. The prisoner had been charged with first-degree murder. The District Court granted relief on the prisoner's claim that counsel was ineffective by requesting a jury instruction on conspiracy to commit murder as a lesser-included offense. "The tactic may have worked to the prisoner' advantage, as he was acquitted of both first and second-degree murder". Citing the above quoted language from Cronic, supra, Magistrate Judge Piester reasoned that defense counsel "stepped outside the role of advocate for the petitioner and assumed the role of prosecutor." 769 F. Supp. at 1110-1111.

The Court explained how counsel's efforts, though engaged with the intent to save their client, upset the adversarial balance:

> In every criminal case it is the function of the prosecuting attorney to determine the potential charges which are justified from the facts and evidence arising form a particular case. The essence of the adversarial process is that a state must give a defendant notice of the charges against him or her in order that the defendant may properly prepare a defense, [citation omitted], and the state must prove, beyond a reasonable doubt, that the defendant committed the acts charged. Here counsel for the petitioner effectively amended the state's information against the petitioner to include a charge which the state chose not to bring in the first place.

769 F. Supp. at 1111.

Citing and relying upon Ricalday v. Procunier, 736 F.2d 203 (5th Cir. 1984), the district court concluded that "petitioner's counsel were not acting as effective advocates for their client at the time they submitted a proposed instruction which endorsed and uncharged crime against him." Id. This case is similar to Patterson because the failures of defense counsel with respect to the jury instructions given in this case resulted in the opportunity to convict Porter upon legally inadequate theories. Just as ineffective counsel in Patterson endorsed convictions of their clients on the otherwise unavailable charge of conspiracy, counsel in this case silently endorsed conviction of Porter on a host of legally inadequate theories which should have been unavailable.

Petitioner submits that when the government is not required to prove each element of the offense, his case has not been subjected to "meaningful adversarial testing" and the presumption of unreliability suggested by the Supreme Court in Cronic applies.

This is especially true when, instead of being able to find each essential element, the jury is permitted to convict the accused based on several legally inadequate grounds. This is what occurred in this case amidst the silence of defense counsel. Prejudice is accordingly established.

Based upon the foregoing, the lack of representation afforded Porter with respect to the jury instructions violated his Sixth Amendment right to the effective assistance of counsel. This entitles Petitioner to § 2255 relief based upon his right of the Sixth Amendment claims.

D.     **THE RECORD REFLECTS CAUSE AND PREJUDICE EXCUSING PROCEDURAL DEFAULT OF PETITIONER'S SIXTH AMENDMENT CLAIM BASED UPON THE DEPRIVATION OF HIS RIGHT TO A JURY TRIAL, NOTWITHSTANDING WHETHER HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.**

In the event this Court would find that Porter has not established his ineffective assistance of counsel claims, the failure of Petitioner counsel to challenge the instructions at trial and on direct appeal would necessitate an examination of whether Porter can demonstrate "cause of the procedural default" of his Sixth Amendment claim based upon the deprivation of his right to a jury and "actual prejudice resulting from the error." United States v. Frady, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

Porter must first show that there was cause for his failure to raise his claim at trial or on direct appeal. In Gilmore v. Taylor, 113 S.Ct. 2112 (1993), the Supreme Court held that a decision rendered by the Court of Appeals for the Seventh Circuit

established a new rule of constitutional law, because the circuit court had brought general due process standards to bear in a novel situation. In that case, the state Supreme Court had recently held that jury instructions conflicted with the controlling state statute. Thereafter, the Seventh Circuit concluded that the manner in which the erroneous instructions had been given violated due process. In United States v. Swedzindki, 160 F.3d 498 (8th Cir. 1998), this Court faced a similar procedural posture and found sufficient "cause". Swedzinski sought § 2255 post-conviction relief from his conviction for violating 18 U.S.C. § 924(c) by "using" or "carrying" a firearm in relation to a drug trafficking offense. He argued that the jury instructions defining "use" of a firearm were contrary to the Supreme Court's decision in Bailey v. United States, 516 U.S. 1327 (1995), a case decided after his conviction and direct appeal. since Swedzinski had not challenged the instructions on "use" at trail or on direct appeal, his Bailey claim was procedurally defaulted. On appeal, the government conceded that Swedzinski had cause for the default in light of Eight Circuit law established at the time of trial.

Similarly, at the time of Porter's trial and direct appeal, this Circuit had not addressed the issue whether the continuing criminal enterprise statute's phrase "series of violations" create several elements in respect to each of which the jury must agree unanimously and separately. That question was not answered by this Circuit until United States v. Hall, 93 F.3d 126, 129 (1996) decided the issue, holding that:

> The statute, however demands only that the jurors

agree that there was a continuing series, not that
they agree on which offenses make up that series.

Id., at 129.

The Court's holding in Hall, was squarely rejected by the
Supreme Court in Richardson, No. 97-8629 (1999), where the Court
noted:

> To hold that each "violation" here amounts to a
> separate element is consistent with a tradition of
> requiring juror unanimity where the issue is
> whether a defendant has engaged in conduct that
> violates the law. To hold the contrary is not.
>
> Id., at page 5.
>
> Finally, this Court has indicated that the
> Constitution itself limits a state's power to
> define crimes in ways that would permit juries to
> convict while disagreeing about means, at least
> where that definition risks serious unfairness and
> lacks support in history or tradition. Schad v.
> Arizona, 501 U.S. at 632-633 (plurality
> opinion) ...
>
> Id., at page 6.

The Court further pointed out there was no tradition
reflecting a different practice, which suggests that any such
statute would represent a lesser known exception to ordinary
practice.

If the ineffective assistance claim is deemed without merit,
Porter must also demonstrate "actual prejudice" resulting from the
constitutional depravation worked by the deficient jury
instructions. Frady, 456 U.S. 168, 102 S.Ct. at 1594. The issue is
whether the instructions "worked to [Porter's] actual and
substantial disadvantage, infecting his entire trial with error of
constitutional dimensions." 456 U.S. 170, 102 S.Ct. at 1596. The
means by which Porter will meet this challenge is straightforward.

The jury instructions clearly infected the trial with error of constitutional dimensions because they deprived Porter of a jury verdict consistent with his rights under the Sixth Amendment. Further, the record demonstrates that Porter suffered "actual and substantial disadvantage' as a result of the deprivation because the government was not limited to violations of Title 21, in proving the requisite "series of violations". Therefore, the jury in this case did not return a verdict consistent with Porter's Sixth Amendment right to a jury. Porter submits the simple proposition that a trial failing to produce a verdict consistent with the accused's Sixth Amendment right to a jury is a trial infected with error of constitutional dimensions. See Neder, 119 S.Ct. at 1844 (Scalia, J., dissenting ) ( referring to Sixth Amendment as "spinal column of American democracy"). Under these circumstances, it cannot be said that Porter was not disadvantaged by the instruction's failure to require juror unanimity as to three such violations.

Finally, the lessons of the Supreme Court teach that, in light of the nature of the deprivation suffered by Petitioner, this Court should act with great caution and deference to Porter in undertaking this "speculation" as to whether a properly instructed jury would have found him guilty. In Sullivan, the Supreme Court held that, while most constitutional errors can be held "harmless" in terms of their effect of the fact-finding process at trial, some constitutional errors "will always invalidate the conviction." 113 S.Ct. at 2081, citing, Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 1705 (1967). The Supreme Court

reasoned that the harmless error analysis is appropriate only when the jury has rendered a guilty verdict within the meaning of the Sixth Amendment right to a jury. When such a verdict has not been rendered, harmless error analysis is inappropriate because it would entail no more than appellate speculation about what a hypothetical jury's verdict would have been, rather than whether the jury's verdict would not surely have been different. 113 S.Ct. at 2081-82. "[T]o hypothesize a guilty verdict that was never in fact rendered-- no matter how inescapable the findings to support that verdict might been would violate the jury-trial guarantee." Id.

Based on Sullivan, it appeared to some that convictions resulting from jury instructions which did not require a unanimous finding by the jury of facts constituting the "functional equivalent" of each element of the offense charged were subject to automatic reversal. See, e.g., Hicks v. Small, 69 F.3d 967 (9th Cir. 1994) (en banc). In Neder, however, the Supreme Court recently held that a jury instruction that omits an element of the offense does not necessarily constitute a "structural error" automatically invalidating a conviction rendered in its wake, despite resulting denial of the accused's Sixth Amendment right to a jury trial. 119 S.Ct. at 1833. Nonetheless, the combined lessons of Sullivan and Neder teach that the error resulting from the jury instructions given in this case defies an accurate examination into the likelihood of the result would have been different had the jury been properly instructed. Just as the constitutional deprivation in Sullivan defied an examination of whether the

instructions were not prejudicial to the fact-finding process beyond a reasonable doubt, the deprivation in this case impedes an accurate examination into the likelihood of whether the result would have been an acquittal on the CCE offense and, for the reasons so eloquently put by Judge Scalia dissenting from the <u>Neder</u> majority, this Court should act with great caution before deciding it would not have been.

Based on the foregoing, the record reflects cause and prejudice excusing procedural default of Porter's claimed Sixth Amendment deprivation of his right to a jury trial, notwithstanding whether he received ineffective assistance of counsel.

E.      **IN LIGHT OF <u>RICHARDSON</u> IT IS PERTINIENT FOR THIS COURT TO RE-REVIEW THE ISSUE DECIDED BY THE UNITED STATES SUPREME COURT AS IT PERTAINS TO PORTER, SHOWING A CHANGE OF CIRCUMSTANCES.**

Had the Court properly instructed, the jury on the unanimity instructions as required by <u>Richardson</u> and the jury had been required to list which offense violations they found that made-up the continuing series this Court would have proof befroe it that Porter's second conviction and sentence would be contrary to the Court's holding in <u>Rutledge</u>.

on July 8, 1991, Porter filed his first §2255 motion entitled: <u>Wayne Porter v. United States of America</u>, no. C-C-91-207 P. In this §2255 motion, Porter made several claims of error which is incorporated herein by reference and need not be exhaustively repeated here.

In the first §2255 motion Porter argued that his second prosecution violated the Fifth Amendment's double jeopardy bar

as to both cumulative punishment and successive prosecution for the same offense. In denying Porter's requested relief the Magistrate erroneously found, that the Supreme Court's holding in Garrett v. United States, barred Porter's lesser included offense argument compare the following factual finding of the Magistrate:

> But the lesser included offense double jeopardy analysis was exactly the type of reasoning that the Supreme Court in Garrett held was not applicable to multi-layered offenses such as CCE.

See Magistrate Memorandum and Recommendation at p.12.

> This is precisely the reason that the Supreme Court in Garrett held that multi-layered offenses like CCE should not be subject to the lesser included offense double jeopardy analysis.

Id., Magistrate Memorandum and Recommendation, at p.19.

The District Court, in denying Porter's first §2255 motion, accepted the government's and Magistrate's premise that the Supreme Court's holding in Garrett barred Porter's double jeopardy claim that he was twice placed in jeopardy for the same offense, continuing criminal enterprise (§848), after he had previously plead guilty to a conspiracy to import and distribute marijuana in violation of §§846 and 963, despite the fact that--those convictions were relied on as predicate offenses required for a conviction in his second prosecution for CCE. Compare for example, the Court's holding:

> After conducting this de nova review the Court believes that the record supports the Magistrate's finding of fact. The Court also believes that the Magistrate has correctly applied the controlling law as to all matters except two. The first is Petitioner's alleged right to have his conspiracy convictions vacated. The second is any implication that the Petitioner may have some remedy because of a lack of due dilligence between the time the Government was aware of Petitioner's violations and its decision to bring the CCE charges.

- 28-

<u>Id.</u>, District Court's Order at pp. 3 and 4.

The Magistrate's cited analysis of the Court's holding in <u>Garrett</u> is in direct conflict with what the Court in <u>Rutledge</u> explained their holding in <u>Garrett</u> to be. The Court pointed-out that:

> <u>Garrett</u>...is not to the contrary. There, we affirmed the defendant's prosecution for a CCE violation even though he had previously pleaded guilty to a predicate crime of importing marijuana. <u>That holding, however, merely adhered to our understanding that Legislatures have traditionally preceived a qualitive difference between conspiracy-like crimes and substantive offenses upon which they are predicated.</u> See e.g., <u>United States v. Felix</u>, 503 U.S. 378, 389, 390, 118 L.Ed.2d 25, 112 S.Ct. 1377 (1992)(allowing prosecution for conspiracy after petitioner was convicted of underlying substantive offenses, and citing <u>Garrett</u> as a similar case). No such difference is present here. <u>In contrast to the crimes involved in Garrett, this case involves two conspiracy-like offenses directed at largely indentical conduct.</u> <u>Jeffers v. United States</u>, 432 U.S. 137, 157, 53 L.Ed.2d 168, 97 S.Ct. 2207 (1977), <u>Garrett</u>, 471 U.S. at 794, 85 L.Ed.2d 764, 105 S.Ct. 2407 ([T]he plurality [in Jeffers] resonalbly concluded that the dangers posed by a conspiracy and a CCE were similar and thus there would be little purpose in cumulating the penalties).

<u>Rutledge</u> at 134 L.Ed.2d 428, n. 12 (Emph. added).

> [t]here is no reason why this pair of greater and lesser offenses should present any novel problem beyond that posed by any other greater and lesser included offenses, for which the Court's have all ready developed rules to avoid the perceived danger.

<u>Rutledge</u>, 134 L.Ed2d at 431.

Contrary to the Magistrate and this Court's holding that <u>Garrett</u> barred Porter's double jeopardy claim, the Rutledge Court pointed-out that there is no exception to the rule made by <u>Garrett</u> as this court found to deny Porter's first §2255, that allows a defendant to be prosecuted for the lesser offense conspriacy (§846) and then prosecuted for the greater offense §848.

-29-

Therefore, Porter's second conviction is <u>not</u> only contrary to law, but, based upon a mistaken view of law, and upon an erroneous application of legal principles requiring reversal of Porter's second conviction.

F.     **THE COURT'S HOLDING IN <u>RUTLEDGE</u> ALSO BARS CUMULATIVE PUNISHMENT FOR CONSPIRACY (§846) AND CONTINUING CRIMINAL ENTERPRISE (§848)**

Even-though, the Magistrate's correctly stated that: "Although his [Porter] sentences on these counts have already been vacated, he is entitled under a recent clarification of Fourth Circuit law to have the convictions on the conspiracy counts vacated." (<u>Id</u>., Magistrate's Memorandum and Recommendation at pp.21 and 22). The Court's reasoning for rejecting this portion of the Magistrate's Memorandum and Recommendation was because the Magistrate had applied an unpublished opinion which could not serve as precedent requiring reversal of Porter's CCE conspiracy predicate offense conviction despite the fact that, at that time there were at least twelve published opinions, from this Circuit that reached the identical same conclusion--not to mention at least 70 other published opinions from other Circuit Court's that have reached the identical same conclusion. Infact, after reading every opinion that has been published and numerous unpublished opinions on CCE appeals, Porter is yet to find one published opinion that allowed a defendant such as in Porter's case to have a consecutive sentence and conviction for a conspiracy offense that was relied on as one of the continuing series of violations required for the CCE conviction; other than the one exception; your Petitioner.

-30-

Therefore, since this Court has no jurisdiction over Porter's prior conviction and sentence for conspiracy in the Middle District of Florida prosecution and the Supreme Court's holding in <u>Rutledge</u> that:

> A guilty verdict on a §848 charge necessarily includes a finding that the defendant also participated in a conspiracy violative of §846; conspiracy is therefore a lesser included offense of CCE. Because the Government's arguments have not persuaded us otherwise, we adhere to the presumption that Congress intended to authorize only one punishment. Accordingly, "[O]ne of [petitioner's] convictions, as well as its concurrent sentence, is unauthorized punishment for a separate offense" and must be vacated. <u>Ball</u> 470 U.S. at 864, 84 L.Ed.2d 740, 105 S.Ct. 1668.

<u>Id</u>., 134 L.Ed.2d 432.

The Court also stated: "Thus the second conviction, even if it results in no greater sentence, is an impermissible punishment." <u>Id</u>., 134 L.Ed.2d 429. Therefore, the second sentence that was imposed upon Porter by this Court amounts to cumulative punishment for conspiracy and CCE and must be vacated according to the Supreme Court's holding in <u>Rutledge</u>.

## CONCLUSION

Wherefore, for the foregoing reasons, Petitioner, Wayne Porter, respectfully moves this Honorable Court to vacate his conviction and sentence in the Western District of North Carolina.

Respectfully submitted, this the 25 day of May, 2000.

*Wayne Porter*
WAYNE PORTER
REG. NO. 00622-043
3901 Klein Blvd.
Lompoc, CA 93436-2706

-31-

## CERTIFICATE OF SERVICE

I, Wayne Porter, certify that I have mailed one copy of the attached Title 28, U.S.C. § 2255 Motion And Memorandum Of Law, to the Assistant United States Attorney's Office, addressed as follows:

MR. KENNETH D. BELL
ASSISTANT UNITED STATES ATTORNEY
ROOM 221, 401 WEST TRADE STREET
CHARLOTTE, NORTH CAROLINA 28202

This the 25 day of May , 2000.

*Wayne Porter*
WAYNE PORTER
REG. NO. 00622-043
3901 KLEIN BOULEVARD
LOMPOC, CA 93436-2706